BROWNING et al. v. BROWNING.—132 S. W. (2d) 359.

Eastern Section. May 8, 1939.

Petition for Certiorari denied by Supreme Court, October 14, 1939.

340

Dave M. Guinn, of Johnson City, and Mack Evans, of Elizabethton, for appellants.

E. M. Johnston, Guy O. Ferguson, and R. C. Campbell, all of Elizabethton, for appellee.

PORTRUM, J. On July 17, 1931, Mrs. Ollie H. Browning executed to her son, the defendant J. S. Browning, a five year lease on the real estate located in Elizabethton and used for a picture show and theater, which property is involved in this case. On October 17, 1932, she made and published her will, the terms of which among other things provides in clause four as follows:

"4. I will and bequeath all of my property in Tennessee, both real and personal, to my three children equally, Reba Browning Koontz, Jane Browning, and James S. Browning, Jr. I hereby direct that the lease of my son James S. Browning, Jr., on the theater building in Elizabethton be extended for a period of ten years following my death. The said James S. Browning to take care of all taxes, repairs, and upkeep, that he pay to each of my daughters, Reba Browning Koontz and Jane Browning, the sum of $100 each month during the period of this lease."

The rent of the property under the lease as first executed was payable to the mother, Mrs. Ollie H. Browning, in the sum of $300 per month, and under the terms of the will she extended the lease for ten years at this rental, and as was her expressed intention—that her three children share equally in her estate—she gave each of the daughters $100 per month of the rent, which reduced the rent from $300 to $200 per month, freeing the son from the larger payment, which was equivalent to giving him one-third of the rent during the term.

The bill in this case was originally filed by the sisters charging that the brother had violated the provisions of the lease contract, as entered into between him and his mother, and that they were entitled to a forfeiture of the lease and the sale of the property for partition among the parties of interest. The defendant James S. Browning, Jr., answered, denying that he had violated the provisions of the lease and had forfeited the same, and resisted a sale of the property unless sold subject to the lease, and this he consented to.

Upon the hearing the Chancellor decreed that there had been no breach of the terms of the lease and a forfeiture was not permissible,

but he adjudicated that the tenants in common of the reversion had a right to the sale of the reversion at the present time for a partition, and there was no resistance to this relief. An appeal was prosecuted to this court for a construction of the will and lease, and to reverse the holding of the Chancellor that there had been no breach of the lease, seeking a present sale of the fee for partition among the devisees under the will.

This decree of the Chancellor was affirmed and the case remanded with specific directions to sell the reversion of the estate subject to the leasehold estate for a partition among the devisees.

Upon the remand the property was brought to sale and sold subject to the lease to the sisters for the sum of $40,500; thereafter the defendant James S. Browning raised the bid to $41,500 and the sale was knocked down to him. On application for the confirmation of the sale to him on September 5, 1938, a petition was filed by the sisters seeking an interpretation of the result of his purchase.

The petition sets out that the defendant, James S. Browning, was claiming in the event of a confirmation of the sale that since he by the same became the owner of the lease and the reversion that the legal title merged in him in fee, destroying the less estate, and relieving him from the payment of rent during the balance of the term of the lease. So to protect their rights, and this $200 per month payment under the lease for a term of years, they ask the court for a construction of the confirmation decreed, in the event it had been confirmed, prior to a hearing. Upon a hearing upon this petition, the court applied the strict legal rule of merger and adjudicated that in case James S. Browning became the purchaser and the sale was confirmed to him of the reversionary interest, then as a matter of law the leasehold estate merged in him and he was released from further payments of rent over the balance of the term. And since the parties had bid under a misapprehension, he set the former sale aside, and ordered a new sale of the reversion, providing that in case James S. Browning became the purchaser, and the sale was confirmed to him, that he would own the estate in fee because of merger of the two estates, the lesser into the greater, and that he would be relieved from the payment of $200 per month during the balance of the term, or until 1942 when the lease term is conceded to terminate as we understand. Or at any event, until the termination of the lease.

The property was again exposed to sale, and there being no increased bid it was again knocked off to James S. Browning at his former bid of $41,500, which was duly confirmed to him and adjudicated that the said Browning held the estate in fee free from the provisions of the lease, and from this decree the complainants have again appealed to this court.

At the former hearing in this court it was adjudicated that the

reversion in this property be sold subject to the lease; we interpret that to mean that the purchaser at the sale would receive such interest only as any other purchaser at the sale would receive, which is the reversionary interest with the right to the possession only at the termination of the lease. Certainly the court has power to order the sale of the reversion so as to protect the rights of all parties (and in so doing to carry out the clear intention of the testator), who were the subject of the bounty, and to interpret the decree otherwise would create a hardship that even in the eyes of a layman would stand as a reproach to a court of equity. This is a valuable lease and to permit the lessee to bid for the reversion knowing that he would be relieved from the terms of the lease if he purchased the property, while any other purchaser would not, would give him a decided and unfair advantage against other purchasers, and he would unjustly enrich himself by the aid of the court.

It does not need any argument that a court of equity is not this impotent, and that it should not decree so unjust a result. To do so is to destroy the will of the testator, and to relieve the son of the payment of the rent during the balance of the ten year period, when the testator expressly provided that he should pay the taxes, upkeep, and $100 per month to each of his sisters during the term.

 This suit was instituted in a court of equity for a construction of a will and a lease, under which the parties' rights arose. The doctrine of merger which a court of equity applies is stated as follows:

"The applications of the equitable doctrine concerning merger, although resting upon the same general principle, are various in form, and some of them are of frequent occurrence in this country. The single principle from which the doctrine, in all its modes and forms of application, direct result is the fruitful maxim, that equity, in viewing the transactions of men, and in determining the rights and liabilities arising therefrom, look to the real intent of the parties as constituting the essential substance, and not at the mere external form. In this method of viewing the affairs of mankind, equity often establishes different rules, creating different rights and duties from those which, under the same circumstances, prevail at law. The equitable doctrine of merger is a striking illustration of this most righteous principle; and the whole discussion in fact consists of ascertaining when and how a merger, which would have been inevitable at law, will be prevented or not remains in equity." 2 Pomeroy's Equity Jurisprudence (4 Ed.), Section 786.

"It has been frequently said that at law, the rule that whenever a greater estate and a lesser coincide in the same person without any intermediate estate, the lesser is merged, is invariable and inflexible, and takes effect in some instances, at least, without regard to the question of intention; but this has been questioned, and the tendency of at least some of the courts is to admit and apply the same principle

in both law and equity. In equity, the rules of law as to merger are not followed, and the doctrine of merger is not favored. Equity will prevent or permit a merger as will best serve the purpose of justice and the actual and just intent of the parties, whether expressed or implied. The doctrine of merger has its foundation in the convenience of the party interested, and therefore whenever the right of strangers, not parties to the act, that would otherwise work an extinguishment of the particular estate, require it, the two estates will still be considered as having a separate contingent. Wherever a merger would operate inequitably, it will be prevented.'' Estate, 21 C. J., Section 234, page 1034.

''The doctrine of merger will not apply where it defeats the intention of the grantor or testator. Perry on Trusts, Section 347, 10 R. C. L. 667; 40 Cyc. 1830.'' Winters v. March, 139 Tenn., 496-504, 202 S. W., 73, 75.

To permit a merger under the circumstances detailed here, would not only work an injustice to the sisters, the complainants, and would undermine the sale as a fair public sale, for a stranger could not bid for the reversion against one who was bidding for the fee, but it would destroy the provision of the testator's will and disregard her clearly expressed intention.

The decree of the Chancellor is reversed; and the sale as made subject to leasehold estate, as first decreed, passed the title only to the reversionary interest, and the purchaser James S. Browning, Jr., acquired only this interest. Upon the resale no one raised his bid and it was finally knocked down to him at his original purchase price of $41,500, and the sale as confirmed to him will date as of the date of the confirmation decree, but said confirmation decree will pass only the reversionary interest in the property to him. Had he been mislead and increased his bid by the construction placed upon the sale by the Chancellor, the court would be inclined to set the sale aside and order a resale, but he was not mislead when he made his original bid, which was the final bid, and we can see no reason why he should complain because he was unsuccessful in his claim for a larger estate. The case will be remanded to the lower court for a distribution of the funds and such other administrative orders as are necessary. The cost of this proceeding will be taxed against the appellee.

Ailor and McAmis, JJ., concur.

On Petition to Rehear.

The petitioner, James S. Browning, feels much aggrieved because the court ordered the original sale of the property involved here confirmed; that is, because the court declined to order a resale of the property to give the bidder an opportunity to escape from his

incurred obligation. This question was discussed in the original opinion and determined, but the court will briefly discuss the facts again.

When the case was originally before this court, it ordered a sale of the property subject to the leasehold estate existing upon the property, and the case was remanded to carry out this sale. An order of sale was made in obedience to the decree. The property was offered for sale in due course when the original complainant Jane Browning and Reba Koontz became the purchaser at the price of $40,500 and they complied with the terms of the sale. Thereafter, the defendant, James S. Browning, Jr., appeared and entered a raised bid for the property in the sum of $41,500, and complied with the terms of the decree, but he attempted to place a condition upon his bid, in effect amending the decree of the court and stating that he bid on the sole condition that he was taking the property free and clear of all encumbrances, especially the lease referred to, and to which the sale was ordered made subject. He construed the purchase of the fee to create a merger of the leasehold and fee estate, notwithstanding that in the decree the court had ordered the property sold subject to the lease. This was a mistaken conclusion of the law hardly justified under the terms of the decree of sale. His bid released the original purchasers and their sureties, and had he petitioned to be relieved of his bid because of his mistake of law, he would have had no equitable standing to open the property up for a resale to bring such sum as may thereafter be bid for it. When the court orders a sale of property under its decree, the bidders are not at liberty to construe that decree favorable to themselves, and if their construction is not maintained, to have their bid set aside. A purchaser must stand upon an equal footing with all bidders taking an equal chance upon the construction of a decree of sale as favorable to the purchaser. The fact that the position taken by the defendant in attempting to make a conditional bid upon the property frightened the complainants and they instituted proceedings for a construction of the decree of sale prior to the confirmation does not affect the equity of the defendant. If he were not entitled to set the sale aside because of his mistake of law, or because his bid was speculative, he cannot complain if he does not reap the same results through the action instituted by the complainants.

This property was sold in September, 1938, for $41,500, and the interest upon this sum for one year is considerable. So, if the court orders a resale this interest is lost by the complainants and gained by the defendant, even in the event he bid the original bid of $41,500, and he does not ask that the sale be confirmed to him at this date at this sum, losing to the parties only the interest, but he wants the sale reopened, giving him an opportunity to put in even a lesser bid than either of the two bids heretofore made, which procedure would work greatly to the detriment of the complainants and in favor of·

the defendant, all because he undertook to construe this court's decree and to bring about the long delay in the final determination of the matter. The complainants, the original bidders, acquired rights under their purchase that could not be taken away from them by an unwarranted legal assumption on the part of the defendant and the avoiding of the sale and the loss of the interest upon the purchase price at the time and through the long delay incident to the prosecution of this claim through the Appellate Court.

After the case was determined, notwithstanding the issue was simple and had been discussed and disposed of in the original decree, the petitioner applied for and obtained time to file a motion to rehear, which time was granted by a member of this court, and by the petitioner's negligence, the matter has again been delayed for a long time. To grant the petitioner relief would entail a great damage on the complainants, perhaps causing the loss of several thousand dollars if the complainants are not now in a position to protect their interests, and the defendant only raised the bid $1,000, so this measures his injury growing out of his unfounded assumption that he was taking the fee to the estate, and his making the conditional bid accordingly. He makes no offer to do equity and does not show himself entitled to any equitable relief. Had he not raised the bid, the complainants would have been obligated to pay interest upon the purchase price from the date of their purchase, and we see no reason why the defendant should be relieved of a like obligation under his bid. At the time the property was worth the sum bid by the complainants, and they complied with the order of court and were entitled to the property, unless the bid was raised, and in that event they were entitled to interest upon the raised bid from the date of the raised. The defendant cannot escape the obligation incurred by his bidding, because he thought the decree of sale should be construed in a way favorable to him.

The court finds no merit in the petition to rehear and it is overruled with costs.

Ailor and McAmis, JJ., concur.